# KROHN-FECHHEIMER COMPANY, Appellant, v. WILLIAM B. PALMER et al.

### Division One, April 10, 1920.

1. **SALES: Statute of Frauds: Place of Performance: Signing.** Contracts for the sale of goods, wares and merchandise are subject to the provisions of the Statute of Frauds (Sec. 2784, R. S. 1909) without reference to the place of performance. So that where the seller's domicile was Ohio, a contract of sale of goods to merchants in Missouri did not arise from the mere delivery in this State of the unsigned orders for the goods, or duplicates thereof.

2. ———: **Acceptance: Countermand.** An offer to buy goods may be withdrawn before it is accepted by the seller; and although it provides that it is not subject to be countermanded, it can nevertheless be countermanded before it is accepted by the seller. So that where plaintiff's salesman visited defendants for the purpose of selling them shoes, and they concluded to buy, and he made two lists of shoes, on paper ruled for that purpose, with certain headings and notes printed thereon, including the statement: "This order is not subject to countermand," one being for twenty-four pairs at $68.40, to be delivered "at once; rush," and the other for forty-eight pairs at $113.35, to be delivered on February 15th, both dated November 2nd, the first marked "Order No. 23" and the other "Order No. 24," neither containing any words indicating a sale or purchase, neither signed by either party, nor any words indicating they were intended to be signed, neither having blank lines for signature, and one copy of each being sent by the salesman to the seller and one being left with the buyers, the orders were unilateral and were subject to be countermanded before they were accepted, and the facts indicate a guarded effort by the seller to avoid being bound until after acceptance.

3. ———: ———: ———: **Two Orders.** The fact that two separate or even a dozen pieces of paper were used in listing the goods sold does not make separate and distinct orders for goods bought; but in view of the facts of this case, where one list of shoes to be delivered "at once; rush" and were therefore available for winter sales, was marked "Order No. 23," and another list for twice as many, at a much less price, to be delivered on February 15th and would therefore be available for spring sales only, was marked "Order No. 24," and it is over this last order that the

Krohn-Fechheimer Co. v. Palmer.

question of right to countermand arises, it is *held* there were two separate and distinct orders, though the lists were made at the same time.

4. ———: ———: ———: **Prompt Attention.** A postal card, sent by the seller of shoes to the buyer, immediately on receipt of the orders, that they "have been received and will have our prompt attention," in the absence of a further showing of the intention of the parties, does not amount to an acceptance, but only to a promise that their acceptance will be considered, and therefore does not forestall a countermand.

5. ———: ———: ———: **Separate Orders: Accord and Satisfaction.** If the purchase of goods by defendant consisted of two separate and distinct orders, a cancellation of one of them before acceptance prevents recovery on that order by the seller, although the buyer paid for the goods embraced in the other; and as the buyer cancelled the one sued on before it was accepted, the question whether payment for the goods called for by the other constituted full satisfaction is not for consideration.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker, Judge.*

Affirmed.

*Herman Pufahl* for appellant.

(1) The court erred in excluding that part of the order of November 2nd, which was to be shipped "at once;" also excluding the bill of lading for that part of the shipment. These were clearly competent to show: first, that defendants had no right to countermand any part of the order of November 2nd; second, that plaintiff's place of business was in Cincinnati, Ohio; third, they were especially important, in view of the fact that no place of delivery is mentioned in the order, and the defendant Palmer testified that defendants paid the freight on these goods, thereby clearly indicating that the place of delivery was at plaintiff's place of business, or at least that delivery to the railroad company in Cincinnati constituted delivery to defendants; and fourth, that plaintiff delivered part of the goods; and that such delivery was to the same carrier, as that part of the order

shipped on February 23rd.   (2) The letters of November 24th and 30th were incompetent.   Defendants had no right to countermand or cancel the order; therefore, all evidence as to the attempted countermand or cancellation of the order was inadmissible and incompetent.   (3) The court correctly declared the law to be that the entire bill of goods ordered by the defendants on November 2nd constituted but one order or purchase.   Rickey v. Tenbroeck, 63 Mo. 563; Earl Fruit Co. v. McKinney, 65 Mo. App. 220; Parlin & Orendorff Co. v. Boatman, 84 Mo. App. 72; Krippendorf-Ditman Co. v. Hunt-Riddick, 190 S. W. Rep. 44.   (4) Even though the goods were to be manufactured afterwards, yet the transaction was a purchase and sale.   Pratt v. Miller, 109 Mo. 78; Burrell v. Highleyman, 33 Mo. App. 183; Helmers, Betman & Co. v. Nagel & Co., 112 Mo. App. 202; Krippendorff-Ditman Co. v. Hunt-Riddick, 190 S. W. Rep. 44.   (5) The plaintiff (vendor) had the right to treat the shoes as belonging to the defendants, ship them to defendants and recover the full purchase price.   It was a completed sale, an executed contract, and not an executory contract or promise to sell.   The title to the shoes vested in defendants; they became the owners of them, and are liable to the plaintiff for the contract price thereof.   Benjamin on Sales (4 Ed.), sec. 788; 3 Parsons on Contracts (7 Ed.), pp. 209, 210; Pond v. Wyman, 15 Mo. 183; Steinberg v. Gebhardt, 41 Mo. 519; Dobbins v. Edmonds, 18 Mo. App. 318; Ozark Lumber Co. v. Chicago Lumber Co., 15 Mo. App. 561; Koenig v. Truscott Boat Mfg. Co., 155 Mo. App. 684; Oehler v. Fruit Co., 162 Mo. App. 454; Dehner v. Miller, 166 Mo. App. 504; Potato Growers' Assn. v. Prod. Co., 185 Mo. App. 1; Stewart Prod. Co. v. Com. Co., 189 Mo. App. 658.   (6) Where the contract specifies no place of delivery, the presumption is that delivery is intended at the place of business of the seller, or to the carrier at such place.   Comstock v. Affoelter, 50 Mo. 411; Blooms Sons' Co. v. Haas, 130 Mo. App. 122; Woldert Grocery Co. v. Pillman, 191 Mo. App. 24.   (7) Defendants having accepted part of the goods purchased

on November 2nd (that part to be shipped "at once"), this amounted to an acceptance of the entire order and of all the goods ordered. Rickey v. Tenbroeck, 63 Mo. 569; Earl Fruit Co. v. McKinney, 65 Mo. App. 229; Hollrah-Dieckman Co. v. H. & W. Cl. Co., 186 Mo. App. 213. (8) And, although they had attempted to countermand the order, yet, having afterwards accepted part of the goods, this amounted to a withdrawal of the countermand, and they became liable for the purchase price of all of them. Frederick v. Willoughby, 136 Mo. App. 248; Koenig v. Boat Mfg. Co., 155 Mo. App. 700.

*Cunningham & Skinker* for respondents.

(1) This is an action on an executory contract which was cancelled by the defendants and notice of such cancellation given to the plaintiff while it remained executory. The plaintiff is not entitled to recover the contract price and the judgment should be affirmed. Potato Growers Assn. v. Prod. Co., 185 Mo. App. 5. One party to an executory contract has the power to repudiate it, and the remedy of the other party, injured thereby, is an action for damages caused by the breach of the contract; he cannot thereafter himself perform and recover on the contract, nor in an action on the contract recover damages caused by the breach. Catalogue Co. v. Car Co., 120 Mo. App. 575; Printing Co. v. Cutlery Co., 143 Mo. App. 518; Fredericks v. Willoughby, 136 Mo. App. 244; American Pub. Co. v. Walker, 87 Mo. App. 503; Potato Growers Assn. v. Prod. Co., 185 Mo. App. 1; Fireworks Co. v. Polites, 130 Pa. St. 536. (2) The cancellation of an order for goods by the buyer is a revocation of the carrier's agency to receive them, and a delivery to the carrier under such circumstances is unauthorized. Catalogue Co. v. Car Co., 120 Mo. App. 581; Fireworks Co. v. Polites, 130 Pa. St. 536. (3) The acceptance by plaintiff of defendants' check for $71.05 enclosed in their letter which stated that it was "to pay our account in full to date," was an accord and satisfaction. "Where a tender is

made upon condition, the person to whom it is made has no alternative but to refuse it or to accept it subject to the condition." Bartley v. Pictorial Review Co., 188 Mo. App. 639; Lightfoot v. Hurd, 113 Mo. App. 612; School Board v. Hull, 72 Mo. App. 406; Andrews v. Contracting Co., 100 Mo. App. 599; Cornelius v. Rosen, 111 Mo. App. 619; Knapp v. Syrup Co., 137 Mo. App. 472; Ward v. Packing Co., 145 Mo. App. 574.

BROWN, C.—This cause comes to us upon a certificate of the Springfield Court of Appeals, under the provisions of Section 6 of the Amendment of 1884 to Article 6 of the State Constitution. Plaintiff is a Shoe Manufacturing Company of Cincinnati, Ohio, which sells shoes to the trade by sample through its traveling salesmen. The defendants are general merchants who deal in shoes and other merchandise at Bolivar, Missouri.

The petition states that on November 2, 1915 "the defendants purchased from the plaintiff goods, ware and merchandise amounting to $181.65," and proceeds as follows:

"Plaintiff states that it was agreed by and between plaintiff and defendants that part of said merchandise should be shipped and delivered at once, and that part of said merchandise should be shipped to defendants on or about the 15th of February, 1916. That defendants agreed to pay for said merchandise within thirty days from the date of shipment.

"Plaintiff states that on the 7th day of December, 1915, it shipped and delivered to defendants a part of said merchandise, amounting to $68.40, which was accepted by defendants; and that on February 23, 1916, it shipped and delivered to defendants the remainder of said merchandise, amounting to $113.25. That on April 15, 1916, the defendants paid plaintiff the sum of $68.40 on part of the merchandise so purchased by defendants on November 2, 1915, and which was delivered to them on December 7, 1915. That they have failed and refused to pay plaintiff the balance due on the

goods, wares and merchandise, purchased on November 2, 1915, amounting to $113.25; that payment thereof has been demanded and been refused. Wherefore, plaintiff says that the defendants are indebted to it in the sum of $113.25, together with the interest thereon."

It asks judgment for the amount so alleged to be paid with interest.

The answer is (1) a general denial, (2) that immediately after making their order of November 2, 1915, they countermanded that portion relating to the shipment to be made February 15, 1916, that the bill sued for was for goods to be included in that delivery, no part of which they had ever received, and (3) that they had on April 13, 1916, sent their check to plaintiff for the sum of $71.05, with the statement that it was in full of the amount due on account of said transaction and that the plaintiff had in due course received and cashed said check, whereby the claim sued on was settled and extinguished.

The plaintiff replied with general denial.

The order for the goods described in the petition was given through a traveling salesman of plaintiff who visited defendants' store for that purpose, and was written on two different printed blanks stating the style of the goods desired as well as the quantity. One of these contained the goods delivered on December 7, 1915, and was marked in a blank for that purpose "at once rush." The other contained the description of the goods sued for and was marked for delivery "on or about February 15th." Both contained the words "this order is not subject to countermand" also "no alterations or changes can be made in order after goods are cut." Neither paper was signed by anybody. They were in duplicate, one copy of each being retained by the salesman and transmitted to plaintiff. The other copy was retained by the defendants. Both were marked subject to approval by plaintiff. It does not appear that defendants were notified of its acceptance.

The plaintiff's testimony shows that all the goods were to be manufactured at its factory in Cincinnati;

that on November 11, 1915, the leather was cut for the "rush" order; that on the 16th of the same month part of the material was cut for the delivery of February 15th, and the remainder on the 20th of the same month.

Under date of November 24th defendants wrote plaintiff as follows:

"Bolivar, Mo., Nov. 24, 1915.

"The Krohn-Fechheimer Co.,
    Cincinnati, Ohio.

"Dear Sirs:

"Our order placed with you for Ladies' shoes for February 15th delivery, through your Mr. E. L. Winey, we are obliged to cancel; also the order for two dozen pair shoes to be shipped at once, and which we have never received. We cannot use any of these numbers, as we did not buy the right shoes that we want to handle in your line. We are sorry to have to cancel the order, but under the circumstances, we are not able to use any of the above."

This letter was received by plaintiff November 26th and was answered the next day. The answer is not set out in the record except that it declined to accept the countermand. Defendants' answer, dated November 30th, is as follows:

"Bolivar, Mo., Nov. 30th, 1915.

"The Krohn-Fechheimer Co.,
    Cincinnati, Ohio.

"Dear Sirs:

"We are just in receipt of your letter, dated November 27th, in regard to one that we wrote you November 24th. When we wrote you this letter and cancelled our order for shoes, we meant what we said, and there is no reason that you should write us this letter. We will not, under any circumstances, accept this order that we have cancelled."

On December 6th plaintiff wrote:

Cincinnati, O., U. S. A. December 6th, 1915.

"Palmer Dry Goods Co.,
    Bolivar, Mo.

"Gentlemen:,

"We are just in receipt of your favor of November 30th, in answer to ours of the 27th, and while you, yourselves, may feel that you are right in your requesting this cancellation, we be-

lieve that we are entitled to some consideration in this matter. Both your "At Once" and February order was given to Mr. Winey as bona-fide orders, in the best of faith, and we accepted them as such and as there was not a question of credit involved, immediately prepared same for the manufacture.   The order for February delivery was prepared for the manufacture as soon as received as this is one of our earliest shipping dates, and it was quite necessary that we get started with your order at once in order to fulfill our part of the contract in getting these shoes to you on date specified in order.   Now, gentlemen, we believe you will see the fairness of our position in this matter in allowing this spring order to come forward as originally intended.   In regard to the "At Once" portion of your order, same is now nearing completion and will be shipped out the latter part of this week."

The plaintiff shipped the goods included in the rush order on the next day, and on January 11, 1916, defendants again wrote as follows:

"Bolivar, Mo., 1-11, 1916.
"The Krohn-Fechheimer Co.,
   Cincinnati, Ohio.
"Dear Sirs:
   "We are in receipt of your statement, dated 1-7-16, to the amount of $89.60, and on comparing it with our books, we find it to be incorrect; also on November 13th, you have us charged with merchandise to the amount of $21.20.   This lot of merchandise was returned to you for credit, and in regard to the bill shipped us December 7th, for $68.40, will say that we cancelled this some time before it was shipped and you people took the liberty of shipping it just the same, and on examining these shoes, we find that they are not the shoes that we bought.   We bought these for Welts and you have shipped us McKays, and as we cannot use this kind of shoes in this make, in stock, we are returning them to you for credit.   Now, gentlemen, once more we are asking you not to ship us the ladies' pumps that were bought for spring delivery.   We have written you once in regard to this lot of shoes, but have never received your acknowledgment of cancellation and if these shoes are shipped, we certainly will not acknowledge them under any consideration whatsoever.   When we have received proper credits for merchandise that we have returned you, we will send you check to balance our account."

Totally ignoring the order contained in these letters with respect to the February delivery and without answering the letter, the goods for delivery February

15th were shipped to defendants on February 23, 1916. On March 31, 1916, plaintiff wrote defendants urging them to receive the February shipment which was then at the railroad station at Bolivar, and enclosing a statement of their account, consisting of three items: (1) the bill for December shipment $68.40; (2) the goods sent in February, $113.25; and (3) a charge for one pair of shoes at $2.65 sold defendants in another transaction.

The February shipment disappears from the record in correspondence between plaintiff and the railroad company as to its disposition.

Ou April 13, 1916, defendants sent plaintiff a check for $71.05, which is the exact amount of the December shipment, together with the pair of shoes above mentioned, with the following letter.

"Bolivar, Mo., April 13, 1916.

• "The Krohn-Fechheimer Co.,

Cincinnati, Ohio.

"Gentlemen:

"We enclose check for $71.05 to pay our account in full to date. Please credit our account for same and oblige."

Plaintiff received the check in due time, cashed it and retained the money, but it remains unacknowledged.

This suit is brought to recover the amount of the February shipment alone as for goods sold and delivered. The cause was tried before the court, which found for defendants and entered judgment accordingly. Further reference will be made to the record as necessary.

I. Before proceeding to notice the questions presented by the parties we will call attention to Section 2784, Revised Statutes 1909, which is as follows:

"No contract for the sale of goods, wares and merchandise for the price of thirty dollars or upwards, shall be allowed to be good, unless the buyer shall accept part of the goods so sold, and actually received the same, or give something in earnest to bind the bargain, or in part payment, or unless some note or

memorandum in writing be made of the bargain, and signed by the parties to be charged with such contract, or their agents lawfully authorized."

We do this because it seems to be an element in the construction of the transaction before us. It was held by this court quite early that such contracts of sale made in this State are subject to the provisions of this statute without reference to the place of performance. [Houghtaling v. Ball & Chapin, 20 Mo. 564.] This seems to be in line with the general tendency of the authorities in this country. [Baker on Sales, sec. 607.] It cannot therefore be contended that any contract of purchase arose from the delivery of these orders or either of them in this State. We think, however, that this statute will aid us in getting to an understanding of the meaning of the facts before us.

*Place of Performance.*

The defendants are general merchants of Bolivar, Polk County, Missouri, and as such deal in shoes. The plaintiff is a manufacturer and wholesale dealer in shoes at Cincinnati, Ohio, and sells shoes through traveling salesmen, one of whom called upon defendants at their store in Missouri for that purpose. Defendants concluded to buy, and during the progress of the negotiation two lists of shoes were made on paper, ruled for that purpose, carried by the salesman, with certain headings and notes thereon including time of delivery and the statement, "This order is not subject to countermand." One of these was for 24 pairs of shoes with price attached amounting to $68.40, and the time of delivery was indicated by the following words: "at once *rush.*" The other order contained a list of 48 pairs amounting to $113.25, with time of delivery "on or about February 15, 1916." Both lists were dated November 2, 1915, and this suit is brought to recover the price of the goods contained in the second list for delivery on or about February 15th. The first list described is marked Order No. 23, and the other, containing the goods sued for, is marked Order No. 24.

*Acceptance.*

Neither of these lists contained any words equivalent to an order for goods unless it is included in the words "order not subject to countermand." Nor any words indicating sale or purchase. They were not signed by either party to the transaction; nor was there anything printed on them indicating that they were intended for signatures. In this case the salesman kept a copy of each, which he forwarded to the plaintiff at Cincinnati, where they arrived on November 4th. The defendants also retained a copy of each. That the transaction was not intended as a sale is shown by the testimony of the plaintiff's cashier, in substance, that they became effective when approved by the proper representative of plaintiff at its office and were only executed after such aproval. Up to that time there was no contract of sale and purchase, but it was simply an unilateral proposition to be accepted or rejected at the pleasure of the plaintiff. The words "not subject to countermand" are not explained by the parties, and we may surmise that they were intended as an oral option giving the seller a reasonable time in which to accept the order, so as to complete the contract of sale.

These papers seemed to have been drawn with care in pursuance of a design that they should not carry upon their face an imputation that they were intended as contracts of sale or that the selling agent had any other authority than to solicit the order, enter the lists of goods desired upon the blank he carried for that purpose, and to transmit it to the home office for approval and acceptance. It contained nothing on its face suggesting a place for signature. The provision of the Statute of Frauds we have quoted, which strikes at the validity of these instruments as sales and not as evidence, and the studied omission not only of a signature but of any indication that a signature was intended, is sufficient evidence of the intention of the plaintiff to fully protect itself in this respect, without its testimony that its approval and acceptance was necessary to its completion. Until such acceptance should be indicated by the plaintiff it stood as a mere proposition.

Krohn-Fechheimer Co. v. Palmer.

This rule is stated as follows: "An offer to buy or sell must continue down to its acceptance to constitute a binding contract, and ordinarily the offer may be withdrawn at any time before it has been accepted by the other party." [23 R. C. L. p. 1287.] The same author in the next following section says: "In case of orders for goods given to a traveling salesman of the seller, whose authority extends only to, the solicitation of orders and the forwarding of them to his principal for acceptance or confirmation, it is well settled that the order or offer may be withdrawn at any time before it has been accepted by the seller. Although an order does not provide that it is subject to the seller's approval, and does provide that it is not subject to change or countermand, it, nevertheless, is held that it may be countermanded prior to its acceptance by the seller, where it is given to an agent whose only authority is to take orders and forward them to his principal for acceptance." This proposition is supported by many authorities which the author cites and to which we invite attention in this connection. The "order" in this case was a guarded offer to purchase on terms evidently dictated by the seller with due regard to its own protection and we consider it in that light.

II. Another element of this transaction presents itself for determination at this point. Did the transaction with the traveling salesman consist in one order or two? In our opinion there were two distinct and separate orders, each complete in itself and constituting the initial step in a separate contract to purchase. This does not follow from the fact that there were two pieces of paper instead of one upon which the order was expressed. Even had there been a dozen it might have amounted to but one single transaction without anything in the writing to the contrary. In this case it is plainly written otherwise. Each paper upon its face is indicated to be a separate proposition. One of them describes itself as "Order No. 23" and the other as "Order No. 24." Looking for

an explanation of this in the terms of the proposition we find that they expressed different conditions. Order No. 23, for twenty-four pairs of ladies' shoes, according to samples indicated, were not only to be delivered at once, but, dissatisfied with this expression of haste, it was further stated that they were to be *rushed*. The acceptance of this order with these compelling words of haste indicates plainly promptness was an element of the transaction, and it is not unreasonable to infer from these words that an element of hurry was intended to be induced by them which did not exist in the more deliberate and dignified delivery exacted by the terms of Order No. 24 for double the number of pairs at considerable less per pair. The season was changing. Order No. 23, if *rushed,* would be on the shelves for winter sale, while Order No. 24 would be on hand for the opening of the spring trade. However this may be, the fact that they were distinct and separate transactions was indicated by the numbers on their face as well as a marked difference in the price of the separate lots. No presumption could arise—in fact every presumption seems to be excluded—that the course of each of these sales was to depend upon the course of the other, or that the "rush" order could not be rejected without avoiding the transaction as to the other. It seems to have been a wise plan intelligently executed.

III. These orders were, by the traveling salesman who negotiated them, transmitted to the plaintiff company at Cincinnati, so that they arrived on the 4th of November. That the *rush* order called for an immediate acceptance or rejection and prompt notice thereof appears plainly by its terms. The only suggestion of that acceptance which the law requires to convert the unilateral order into a mutual contract giving the defendant a remedy for its breach is founded in the statement of a witness who testified: "Before cutting these shoes, we sent to Palmer Dry Goods Company a postal card, notifying them that their order

*Prompt Attention.*

had been received and would have our attention." This, in the ordinary sense of the words used would mean nothing more than a promise that its acceptance would be considered. Whether these words have acquired, in law, a broader and more sweeping significance, is a matter to be determined from the books; and the frequency and confidence with which the judge who wrote the dissenting opinion of the Springfield Court of Appeals cited Ruling Case Law compelled our attention to that excellent work where we find the following references to the acceptance of orders taken by traveling salesmen: "In the absence of a further showing of the intention of the parties, the better view seems to be that a letter acknowledging the receipt of an order coupled with the words 'the same shall have prompt attention' or 'prompt and careful attention' is not of itself an acceptance which will prevent a withdrawal of the order by the buyer or bind the seller to fill the order, though it may be evidence to be considered with other circumstances." [23 R. C. L. p. 1289.] When we consider that this acceptance is the only thing that binds the seller to performance and thereby entitles the purchaser to relief, the reason of the rule becomes evident. This question was recently considered by the Supreme Court of Kansas in a case strikingly similar to the one at bar. [Bauman v. McManus, 75 Kan. 106.]

The plaintiff rushed this "Order No. 23," as its evidence tends to show, by cutting the leather for the 24 pairs of shoes a week after it was received. On November 24th the defendants, hearing nothing further, cancelled both orders by the following letter:

"Bolivar, Mo., Nov. 24, 1915.
"The Krohn-Fechheimer Co.,
   "Cincinnati, Ohio.
"Dear Sirs:
   "Our order placed with you for Ladies' shoes for February 15th delivery, through your Mr. E. L. Winey, we are obliged to cancel; also the order for two dozen pair shoes to be shipped at once, and which we have never

received. We canot use any of these numbers as we did not buy the right shoes that we want to handle in your line. We are sorry to have to cancel the order, but under the circumstances we are not able to use any of the above.''

This letter directs attention to the evidence that the goods included in the ''rush'' order had not yet been received, and plainly expressed the insistence of defendants that the two papers were distinct and separate orders, distinguished by the terms of delivery as well as the separate blank upon which it was written and the number by which it was designated upon its face. There can be no question of this, nor can there be any question that each as well as both was by the terms of this letter distinctly and definitely countermanded and withdrawn. Nor can we doubt the legal proposition that at that date, as well as on the 26th of the same month, when the letter was received, each and both these orders remained unaccepted and unilateral in its undertaking. Nothing had occurred up to that time to give the defendants an action for a refusal of the plaintiff to deliver the goods. It is true that there is testimony that all the leather had then been cut, but a shadow is cast over that proposition by

Part Performance. the fact that there is no reference to it in any of the correspondence before us until the letter of December 6, 1915, to which we will refer in its order.

Defendants answered the letter last quoted, and the answer is not in the record otherwise than by reference to it in the following reply of November 30th:

''Bolivar, Mo., Nov. 30th, 1915.
''The Krohn-Fechheimer Co.,
   ''Cincinnati, Ohio.
''Dear Sirs:

''We are just in receipt of your letter, dated November 27th, in regard to one that we wrote you November 24th. When we wrote you this letter and cancelled our order for shoes, we meant what we said, and there is no

reason that you should write us this letter. We will not, under any circumstances, accept this order that we have cancelled.''

This brought the following from the plaintiff:

"Cincinnati, O., U. S. A. December 6, 1915
"Palmer Dry Goods Co.,
    "Bolivar, Mo.
"Gentlemen:

"We are just in receipt of your favor of November 30th, in answer to ours of the 27th, and while you, yourselves, may feel that you are right in your requesting this cancellation, we believe that we are entitled to some consideration in this matter. Both your "At Once" and February order was given to Mr. Winey as bona-fide orders, in the best of faith, and we accepted them as such and as there was not a question of credit involved, immediately prepared same for the manufacture. The order for February delivery was prepared for the manufacture as soon as received, as this is one of our earliest shipping dates, and it was quite necessary that we get started with your order at once in order to fulfill our part of the contract in getting these shoes to you on date specified in order. Now, gentlemen, we believe you will see the fairness of our position in this matter in allowing this spring order to come forward as originally intended. In regard to the "At Once" portion of your order, same is now nearing completion and will be shipped out the latter part of this week.''

It will be noticed that the 24 pairs of shoes included in the rush order had not, even then, been completed and that the palintiff was inclined to coax the defendants to accept the "spring order" for delivery on or about February 15th. As for the rush order it expressed the determination to ship the goods notwithstanding the countermand of November 24th. In answer to this the defendants wrote:.

"Bolivar, Mo. 1-11, 1916.
"The Krohn-Fechheimer Co.,
    . Cincinnati, Ohio.
"Dear Sirs:

"We are in receipt of your statement, dated 1-7-16, to the amount of $89.60, and on comparing it with our books, we find it to be incorrect; also on November 13th, you have us charged with merchandise to the amount of $21.20. This lot of merchandise was returned to you for credit, and in regard to the bill shipped us December 7th, for $68.40, will say that we cancelled this some time before it was shipped and you people took the liberty of shipping it just the same, and on examining these shoes, we find that they were not the shoes that we bought. We bought these for Welts and you have shipped us McKays, and as we cannot use this kind of shoes in this make, in stock, we are returning these to you for credit. Now, gentlemen, once more we are asking you not to ship us the ladies' pumps that were bought for spring delivery. We have written you once in regard to this lot of shoes, but have never received your acknowledgment of cancellation and if these shoes are shipped, we certainly will not acknowledge them under any consideration whatsoever. When we have received proper credits for merchandise that we have returned you, we will send you check to balance our account."

It seems from the above correspondence that notwithstanding the determined efforts of the defendants to prevent it the plaintiff had forced the goods upon them by shipping them to their address at Bolivar, Missouri, and billing them at the contract price. Although the defendants claimed that they were not the kind of shoes ordered and threatened to return them, this was not done, but the defendants again in that letter distinctly notified plaintiff not to ship the February delivery, and offered, with proper credit for goods returned, to pay the balance of their account as it then stood. Disregarding this plaintiff shipped those goods on February 23, 1916, and they are left by the record in possession of the rail-

road company at Bolivar, awaiting orders from plaintiff as to their disposal.

On March 31st the plaintiff wrote defendants a long letter in which it argued with much earnestness that they should receive and pay for the February shipment and enclosed a statement of its account as follows:

"Cincinnati, U. S. A., 3-31, 1916.
Palmer D. G. Co.,
Bolivar, Mo.

"1220.

| | | |
|---|---|---|
| 1915 | | |
| Dec. 7 | M 2-10-30 ........... | $ 68.40 |
| 1916 | | |
| Feb. 23 | M 2-10-30 ............ | 113.25 |
| Feb. 26 | M 2-10-30 ........... | 2.65 |

$184.30"

This the defendants answered on April 13th with a letter enclosing their check for $71.05 "to pay our account in full to date." This check was received and cashed by plaintiff. It includes the item of the shipment of December 7, 1915, and the charge of $2.65, omitting the item of $113.25 for the February shipment then in the hands of the railway company.

IV. It is evident that from November 26th, when the letter was received by plaintiff definitely and distinctly cancelling both these orders and each of them, they both stood cancelled and withdrawn, and that it required the consent and action of both parties to breathe new life into them or either of them. Each stood upon its own foundation, and to give it new existance Settlement. required action appropriately referable to its own facts. At this time the 24 pairs of shoes included in order No. 23 had, over the insistent protest of defendants, just come to Bolivar and were taken and examined by defendants.

When the goods included in Order No. 23 came to Bolivar in the beginning of January, they were opened and examined by defendants with the result stated in

.their letters of the 11th of that month. This letter re-iterated the withdrawal and cancellation of Order No. 24, expressed dissatisfaction with the attempt to force the goods upon them notwithstanding their cancellation of the order, stated that the goods did not conform in kind to the order, and that they would be returned. This was not done, but instead of returning them defendants on April 13th paid for them on condition that the payment of them and one other insignificant item should be in full of the account rendered, which included the amount now sued for. The plaintiff received and retained this money, notwithstanding such condition expressed in the letter transmitting it, and the question considered by the Court of Appeals in its principal opinion (199 S. W. 763) was whether or not such payment constituted an accord and satisfaction of the claim in this suit. It held that it did. The theory was that the admitted facts, as we have stated them, show that at the time of that payment the liability of the defendants upon the entire transaction was in controversy, and that by the acceptance of any part of it in satisfaction of the whole the remainder was extinguished. The dissenting opinion (199 S. W. 767) stood upon the ground that by receiving and retaining the goods shipped upon Order No. 23, that part of the claim had been separately liquidated by defendants, so that the element of an accord was entirely removed, and the payment amounted only to the payment of a sum conceded to be due on an integral part of the account. Considering this question from the standpoint that there was but a single transaction involved in both claims, and that the final appropriation of these goods was part of the composition of a very substantial defense which covered both items alike, it becomes a very interesting one, but in view of our holding in the preceding paragraph that the transaction consisted of two separate and distinct contracts involving distinct and separate facts, so that an action would not lie upon either for the breach of the other, we fail to see clearly the application of the principle so ably and interestingly discussed in the Court of

Appeals, and leave it for consideration upon a clean sheet when it shall come before the court in a case which involves it.

We hold that Order No. 24 on which this transaction is founded was the basis of a contract separate and distinct from the one which calls for a rush delivery; that it was countermanded and withdrawn before notice of acceptance; and that the defendants were clearly within their right under its terms in refusing to receive the shipment for which compensation is now sought. The facts upon which we have come to this conclusion being admitted in the record, we have no choice but to affirm the judgment of the Polk County Circuit Court, which is done. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur except WOODSON, J., absent.