G. H. Deaton & Company, Appellants, v. Tarkio Molasses Feed Company, Respondent.

Kansas City Court of Appeals. May 25, 1925.

1.—Sales—Where Executory Contract is Countermanded by Buyer, Seller is Limited to His Action for Breach, but Buyer Cannot Countermand after Goods Have Been Produced and Appropriated to Contract by Seller. Where a contract of sale is executory and is countermanded by buyer, the seller cannot go on with performance so as to put himself in a position to make delivery and after subsequent tender sue for the agreed price, but is limited to his action for damages for breach of contract, though where contract is for sale of goods to be manufactured, buyer may not countermand order after goods have been produced and appropriated to contract by seller.

2.—Same—Where Buyer Cancels Order After Goods Have Been Manufactured for Him and Appropriated to Contract, Seller May Recover Full Agreed Price. Where buyer cancels order after goods have been manufactured for him and appropriated to contract, seller may treat property as belonging to buyer and hold it subject to buyer's order and recover the full agreed price.

3.—Same—Contract for Sale of Calendars Held Not Executory at Time Cancellation Was Received. Where calendars had been specially manufactured for defendant and appropriated to contract when order of cancellation was received, held contract was not executory, though calendars were thereafter placed in mailing tubes by seller, such service not being required by contract of purchase but voluntarily rendered by seller without charge.

4.—Same—Where Goods Have Been Specially Manufactured for Buyer and Without Marketable Value, Seller May Ship Goods and Sue for Purchase Price. Where goods sold have been specially made for buyer, and have little or no market value, held seller is entitled, notwithstanding receipt of cancellation of order, to ship goods and sue for purchase price.

5.—Same—Where Title to Goods Had Passed Seller Had Right to Ship Same to Buyer Notwithstanding Receipt of Cancellation Order. Where calendars were specially manufactured and had advertising matter of buyer printed upon them before receipt of cancellation and had no marketable value, held seller had right to ship goods and sue for price as title to goods had passed, even though mailing tubes may have had some market value and were not entirely worthless to seller.

6.—Same—Evidence Held to Show Unqualified Acceptance of Order for Goods. Unqualified acceptance of order for calendars and mailing tubes held supported by evidence.

---

*Corpus Juris-Cyc. References: Sales, 35 Cyc, p. 261, n. 88; p. 527, n. 67 New.

Appeal from the Circuit Court of Jackson County.—Hon. James H. Austin, Judge.

Reversed and remanded.

*H. H. Thurston* and *Busby, Sparrow & Patterson* for appellants.

*Griffin & Orr* for respondents.

BLAND, J.—This is an action on a contract to recover the sum of $660, the purchase price of certain merchandise hereinafter mentioned. The case was tried by the court without the aid of a jury. The record recites that at the conclusion of all the testimony, "the court sustained defendant's demurrer to plaintiffs' case." Plaintiffs have appealed.

The facts show that plaintiffs are a partnership engaged in the manufacture of calendars and other advertising specialties in the City of Chicago; that defendant is a corporation engaged in the sale of stock feed in Kansas City, Missouri; that on November 16, 1920, plaintiffs' salesman took a written order from the defendant at Kansas City for three thousand memoranda and tax calendars for 1922 use and three thousand common sense mailers. The contract price of the calendars was $750 and the mailers (which were paper mailing tubes) $30. The goods were sold f. o. b. Chicago, Ill.

Plaintiffs had the privilege of shipping the calendars and mailers at any time convenient to them after June 1, 1921. The contract was not to be binding upon plaintiffs until confirmed by letter. The order was forwarded by plaintiffs' salesman to their office at Chicago and on November 19, 1920, plaintiffs wrote defendant acknowledging receipt of the order and stating "this order will have our most careful attention." No further communication was had between the parties until June 4, 1921, when plaintiffs wrote a letter to the defendant stating that—

"We are instructed to use the same copy for your 1922 calendars as appeared upon your 1921 calendars unless otherwise advised and we deemed it advisable before proceeding to print up this order to call your attention to this fact.

"Not hearing from you within ten days, we will assume that you do not care to make any change in the advertising matter and will proceed to print your calendars according to the 1921 copy. So, should you desire to make any alterations of any kind, be sure and have a letter reach us before the expiration of that date."

On June 8, 1921; defendant wrote plaintiffs acknowledging receipt of their letter of the 4th and advising them to "make Bell

Phone read Main 0763 and Home Phone Harrison 7662 instead of Main 7662'' and to change the printed matter to be placed upon the calendars so as to make the trade mark ''Tarkio Molasses Feed is winner and awarded prizes over all other feeds,'' read ''The World's greatest and cheapest fat producer.'' Within a few days after the receipt of this letter, plaintiffs proceeded to and did make up the calendars and procured the mailers and laid them aside. Thereafter, on September 3, 1921, defendant wrote plaintiffs claiming the right to cancel the order under the terms of the contract, that ''we regret that it is necessary to request you to cancel this order, for the reason that we can purchase the same calendar for nearly half the price from another concern.''

Some correspondence ensued between the parties in which defendant wrote that a representative of a Des Moines, Iowa concern had called upon it and offered it a larger calendar at a much lower cost but that it was holding off ordering from that concern and would give the business to plaintiffs at the price, which was mentioned in the letter, that was offered by the Iowa concern. Finally defendant wrote on November 3, 1921, that unless it heard from plaintiffs on Saturday it was ''going to place the order with the Des Moines Company.'' Plaintiffs at all times refused to accede to defendant's terms and shipped the calendars and mailers to defendant at Kansas City but defendant refused to accept them. Defendant received the bill of lading and notice that the calendars were at the depot in Kansas City but left them there and at the time of the trial no one knew where they were, but they were supposed to be in the hands of the railroad company unless disposed of by it.

The contract contained a provision that it could not be cancelled except on written consent of plaintiffs. Plaintiffs' salesman wrote on the copy of the order left with defendant, but not on the order sent to plaintiffs, the words ''right of cancellation reserved by the Tarkio Feed Co.'' Plaintiffs insist that the solicitor had no authority, express or implied, to agree to any such condition and defendant does not now contravene this contention but insists that the contract was executory at the time of its cancellation by it and therefore plaintiffs cannot sue for the contract price but, if at all, for damages for breach of the contract.

It is well settled that where a contract of sale is executory and it is countermanded by the buyer, the seller cannot go on with the performance on his part so as to put himself in a position to make the delivery and after subsequent tender sue for the agreed price, but is limited to his action for damages for breach of the contract, but where the contract is for the sale of goods to be manufactured the buyer may not countermand the order after the goods have been produced and appropriated to the contract by the seller.

If the buyer cancels in such a case, the seller may treat the property as belonging to the buyer and hold it subject to the latter's order and recover the full agreed price, or he may ship it pursuant to the contract subject to his right to retain its possession until payment of the purchase price. [Potato Growers Ass'n. v. Produce Co., 185 Mo. App. 1, 6; Range Co. v. Mercantile Co., 120 Mo. App. 438, 447, 448; Carnahan Tin Plate & Sheet Co. v. American Thermometer Co., 236 S. W. 899, 900; Frederick v. Willoughby, 116 S. W. 1109; Loveland v. Wood, 223 S. W. 756, 757; Outcault Advertising Co. v. Wilson, 186 Mo. App. 492; Outcault Advertising Co. v. Carruthersville Plumbing & Auto Co., 230 S. W. 340, 341; Outcault Ad. Co. v. Mack, 259 S. W. 511; J. B. Colt Co. v. Watson, 247 S. W. 493, 494.]

It is insisted by the defendant that when the order of cancellation was received plaintiffs ignored the same and went ahead and put the calendars into the mailers and prepared same for shipment and shipped them to defendant and that plaintiffs' testimony shows that the mailers could have been used for the year 1922 or for any other year subsequent thereto. The price of the calendars was $750 and the mailers $30. The placing of the calendars into the mailers was a very small service and one not required by the contract of purchase but was voluntarily rendered by plaintiffs for which no charge was made. The calendars and mailers could have been tendered to defendant without placing the one into the other and the contract would have been complied with. Therefore, the contract was not executory when cancelled. There is no question but that the calendars having the advertising matter of defendant printed upon them were not articles intended for general consumption but articles specially made for defendant and they had no marketable value. Where such an article is apparently of little value to anyone but the buyer, the seller is entitled to ship the goods and sue for the purchase price (Potato Growers Association v. Produce Co., supra; Roswell Nursery Co. v. Mielenz, 137 Pac. 579 (N. M.); Gordon v. Norris, 49 N. H. 376, 384.), although if such an article is one of general use, the seller does not ordinarily have that privilege. [Weber Motor Co. v. Roberts, 203 Mo. App. 509; Range Co. v. Mercantile Co, supra, l. c. 438.]

At the time the cancellation of the order was received, the calendars had been finished and the mailers had been secured and the whole set aside or appropriated to the contract. Under such circumstances even though the mailers may have had some market value and were not entirely worthless in the hands of plaintiffs, the title to the goods had passed, they were defendant's goods, and plaintiffs were within their right in shipping them to defendant. [Commercial Cash Register Co. v. Drew, 168 Ill. App. 347, 352;

Potato Growers Ass'n v. Produce Co., supra; Gordon v. Norris, supra, l. c. 383, 384; Range Co. v. Mercantile Co., supra, l. c. 448; 24 R. C. L., p. 33, sec. 296; 24 R. C. L., pp. 102, 103, sec. 369.]

It is insisted that there was no acceptance on plaintiffs' part of the order for the reason that the letter of acceptance merely recites "that this matter will have our most careful attention." If this were all that tended to show acceptance, there might be some merit in this contention (see Krohn-Fechheimer Co. v. Palmer, 282 Mo. 82, 95). However, the language contained in plaintiff's letter of June 4th shows that it had unqualifiedly accepted the order and defendant's letter of June 8th in reply thereto shows that it considered that plaintiffs had accepted the same.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.