EARL S. CLARK *vs.* SUMMERFIELD COMPANY.

APRIL 18, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

(1)  *Accord and Satisfaction.  Disputed Claim.*

In order for a payment to work as an accord and satisfaction in settlement of a disputed claim, there must be an honest dispute based on real grounds for dispute; a person cannot create a dispute sufficient for the purposes of an accord and satisfaction by a mere refusal to pay a claim undisputed in fact.

(2)  *Accord and Satisfaction.  Disputed Claim.  Contracts.*

Where the evidence disclosed no dispute or controversy as to the terms of a contract, or as to the performance of the work charged for, or that the bill rendered, which was itemized and for a sum certain, was not a correct statement of the sum due according to the terms of the contract, but, on the contrary, an arbitrary refusal by one party to pay more than half of the bill, a partial payment of the claim, even if accepted in full settlement, is not an accord and satisfaction thereof, as no consideration is shown therefor.

*(3)   Accord and Satisfaction.   Disputed Claim.*

Where the evidence disclosed no honest dispute, based on real grounds, and plaintiff received from defendant a check for a partial payment of the claim, with the words " in full for all indebtedness " thereon, which words plaintiff eradicated with a chemical and thereupon cashed the check, the acceptance of the check under the circumstances did not work an accord and satisfaction of the claim.

*(4)   Contract.   Novation.   Accord and Satisfaction.*

On a motion for a nonsuit, where plaintiff claimed that if the evidence showed an extinguishment of defendant's liability under an old contract, this had been accomplished not by an accord and satisfaction but in consideration of a partial payment and the making of a new contract for additional and future employment, and that he was entitled to go to the jury upon the new contract, the acceptance by plaintiff of a check for the partial payment, marked in full settlement for all indebtedness, could be argued upon the testimony to have been intended by the parties to apply only to present indebtedness, but even if defendant intended the check to extinguish plaintiff's rights under the alleged new contract, and plaintiff so understood when he cashed it, in the absence of any dispute concerning it, the question would then be, was there any consideration moving from defendant to support the implied agreement, if there was such agreement, to extinguish the contract or was it other than a *nudum pactum.*

ASSUMPSIT.  Heard on exceptions of plaintiff and sustained.

BAKER, J.  This is an action of assumpsit for breach of contract.  The case was tried in the Superior Court on October 6, 1916, and at the close of the plaintiff's testimony a motion for a non-suit was granted.  The plaintiff excepted to this decision and the case is before this court on such exception.

The declaration sets up an express contract entered into on, to wit, October 20, 1914, whereby the plaintiff, who is a public accountant, undertook to audit the defendant's books of account, to supervise the placing of said books in proper condition, and to recommend and install such improvements in the defendant's system of

accounting as he should deem advisable, subject to the defendant's approval, in consideration of which services the defendant agreed to pay for the personal services of the plaintiff, or for a senior accountant to be furnished by the plaintiff, at the rate of twenty dollars for a day of seven hours' work, for the services of a junior accountant at the rate of ten dollars a day and a reasonable charge for any stenographic work required in compiling the result of plaintiff's labors.  It is admitted that $708.06 have been paid on account and it is charged that a balance of $708.06 is due under this contract.  The declaration also contains the common counts.  Afterwards an additional count was filed alleging that on December 14, 1914, the plaintiff, who had then received from the defendant $354.03 in partial payment for the services rendered under said contract, agreed to receive and accept the further sum of $354.03 to be paid by the defendant to the plaintiff on January 14, 1915, in full payment and satisfaction of the rest of said indebtedness, and in consideration thereof the defendant agreed to pay said sum of $354.03 on January 14, 1915, and also to employ the plaintiff to audit its books for the months of October, November and December, 1914, and to install changes in defendant's system of bookkeeping and accounting upon the same terms and conditions as those contained in said contract of October 20, 1914; that the payment of the $354.03 had been made by the defendant, but it had neglected and refused to employ the plaintiff according to the terms of its agreement of December 14th.

The defendant pleaded the general issue and what was doubtless intended to be a plea of accord and satisfaction, although it is technically defective in that it does not allege that the plaintiff accepted the final check in satisfaction of the promises and claims declared upon. See Vol. 1, Encyc. of Pl. and Practice, 76, 80.

The evidence shows a contract embodied in a letter from the plaintiff to the defendant, dated October 20, 1914, proposing to audit the books of the defendant from the date it " commenced business up to and including September 30th, 1914," on the terms already stated, and in the acceptance in writing by the defendant of such proposal endorsed on the letter. Thereafter the plaintiff entered upon and performed the work called for by the contract. Under date of December 2, 1914, he rendered a bill to the defendant for " services rendered in auditing and correcting the accounting records of the Summerfield Co. for the period beginning September 1, 1913, and ended September 30, 1914. Also the compiling of a report pertaining to the results of the above. For instructions of Mr. S. Summerfield as per signed agreement dated October 20, 1914. For services rendered from October 20, 1914, to December 1, 1914, inc." The total amount of the bill was $1,416.12 — $39 of which was for stenographic work and the remainder for the services of accountants. The plaintiff says that on December 3, 1914, he received a check for $150 on account, and that as he remembers, no objection was made to the bill then, but that objection was made on December 14, 1914, when the sum of $204.03 was paid on account, and when, Mr. Levy, the manager and secretary of the defendant company, and Mr. Summerfield, its treasurer, being present, it was stated that they didn't realize that the amount of the bill was going to be so large; that the three discussed it and he reminded Mr. Summerfield that he had ample opportunity to stop the work, if so desired, as he had the right to do under the contract; that Mr. Summerfield did not at all dispute the amount of the bill as rendered as proper for the work done, but finally said, " I won't pay you more than half of the bill," and as the discussion continued, also said, " Forget it. Take that and consider

yourself lucky." Following this the plaintiff says, " I told him I could not afford to lose half of the bill, but I was willing to be reasonable, and, as I remember it, he agreed — I stated then if he would give me as a final way of settling it as peaceably as possible — that if he would give me the privilege and give me the balance of the auditing for the next three months and the fixing up of his books as contained in our report I would make the concession, but under no other conditions." . . . " I would waive the balance of the bill, if I could get the balance of his auditing and the system installation as provided in the contract."

All of this occurred at defendant's place of business. The plaintiff further says that Mr. Levy and himself went to the office, where Mr. Levy gave him a check for $204.03, at the same time insisting that the plaintiff should make some entries on the bill, whereupon he, the plaintiff, wrote in red ink on the bill the following entries below the amount:

|  |  |  |
|---|---|---|
|  |  | $1416.12 |
| " 12/3/14 | Rec'd check on acct | 150. |
|  |  | $1266.12 |
|  | Special allowance | 708.06 |
|  |  | 558.06 |
| 12/14/14 | Rec'd check on acct | 204.03 |
|  | To be paid Jan. 14, 1915 | $354.03 " |

Under date of January 1, 1915, the plaintiff sent the defendant a bill for $1,416.12, with credits amounting to $354.03 and at the bottom this statement: " Special allowance. Special understanding made with Messrs. Summerfield & Levy that we would be retained to audit

the balance of the year 1914 and to install suggested changes to the system in consideration of a reduction of 50% of the original bill ($708.06) the balance of $354.03 to be paid on or before January 14, 1915. The balance $1062.09 to be considered due and payable in total, if the above understanding is not carried out by the Summer-field Co.''

Under date of January 6, 1915, the plaintiff again wrote the defendant reasserting in a different way the claim of the understanding as to the '' special allowance.'' No reply was made by the defendant to either of these letters. Another letter from the plaintiff, dated January 4, 1915, refers to the making of an arrangement as to preparing a complete statement as to defendant's affairs for sub-mission to the board of directors. On or about January 13, 1915, the plaintiff received from defendant a check for $354.03, dated January 11, 1915, drawn by Summer-field & Hecht, of Detroit, Michigan, upon the People's State Bank of Detroit. Upon the check were the words '' In full for all indebtedness,'' which words the plaintiff say, he eradicated with a chemical, because they were not in accordance with the arrangement which had been made.

Under date of January 16, 1916, the plaintiff acknowl-edged receipt of $354.03 and notified defendant that un-less by January 30 he received instructions to audit the defendant company's books he would insist on the pay-ment of the balance due under the original contract, $708.06.

Under date of January 27, the defendant wrote the plaintiff that it would not pay him '' anything further on this account.'' The plaintiff also says that after January 16 Mr. Summerfield orally informed him that he had de-cided not to change his method of bookkeeping and not to have the books audited, and that he had never requested

him to further audit the books. Under date of February 1, 1915, plaintiff notified defendant that he insisted on the immediate payment of the balance of $708.06.

The nonsuit was granted on the ground the giving of the check of January 11, 1915, for $354.03, with the words (1) thereon, '' In full for all indebtedness,'' and its acceptance and use by the plaintiff operated as an accord and satisfaction to extinguish all claims of the plaintiff against the defendant, because it was a settlement of a disputed claim.

The question presented is whether or not the evidence shows that there was a *bona fide* dispute as to the plaintiff's claim. As to what constitutes a disputed claim, we quote from 1 R. C. L. 198, the following: '' The question often arises as to what state of facts renders a claim a disputed one so as to make it a proper subject of accord and satisfaction by a part payment. The general rule to be deduced from the authorities seems to be that there must be an honest dispute based on real grounds for dispute; a person cannot create a dispute sufficient for the purposes of an accord and satisfaction by a mere refusal to pay a claim undisputed in fact.'' See, also, 1 Corpus Juris. 555, Hunt on Accord and Satisfaction 182. *DeMars* v. *Musser-Sauntry Land, L. & Manuf'g Co.,* 37 Minn. 418, was an action to recover for work performed for defendant in a logging camp. Defendant claimed a full settlement of plaintiff's claim. The court said: '' To constitute a good consideration for a settlement by way of compromise there must have been an actual *bona fide* difference or dispute between the parties as to their rights. There is an entire absence of evidence in this case tending to show any such dispute. There was certainly none as to the amount of plaintiff's claim. Neither was there any as to when it was due according to the terms of the contract. Swenson, who made the alleged settlement with plaintiff, did not claim that the contract was different

from what plaintiff asserted it to have been . . . He simply asserted, according to plaintiff's statement, that he would not pay all the money because it was not ' the law of the company ' or, according to his own statement, because they ' didn't settle that way,' without giving any reason. A person cannot create a dispute sufficient as a consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion and not compromise.''

In the case at bar the evidence discloses no dispute or controversy as to the terms of the contract, or as to the performance of the work charged for, or that the bill rendered, which was itemized and for a sum certain, was not a correct statement of the sum due according to the terms of the contract. On the contrary, the testimony is that Mr. Summerfield did not at all dispute the amount of the bill as rendered as proper for the work done, but that he arbitrarily announced that he would not pay more than half of the bill, saying '' Take that and consider yourself lucky.''

We are of the opinion, therefore, that the evidence in this case discloses no such dispute as to render the partial payment of the plaintiff's claim, even if accepted in full settlement, an accord and satisfaction of such claim, as no consideration is shown therefor. In *Fire Insurance Association* v. *Wickham,* 141 U. S. 564, 577, the law is thus stated: '' The rule is well established that where the facts show clearly a certain sum to be due from one person to another, the release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a *bona fide* dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was

due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void.'' See, also, 1 R. C. L. 184, 186, 194, 196; 1 Corpus Juris 527, 539, 554; Hunt on Accord and Satisfaction 121, 179; *Fuller* v. *Kemp;* 20 L. R. A. 785, particularly notes on 785 *et seq.* and 795 *et seq.,* and *Hull* v. *Johnson & Co.,* 22 R. I. 66, 67, where the court says, '' Payment of a less sum than is due on an undisputed claim, even though it be offered in full settlement, does not bar a recovery for the balance.'' The defendant largely relies on *Hull* v. *Johnson & Co., supra,* as apparently did the court below. In that case the plaintiff had a claim for $58.48 against the defendant which was undisputed. The defendant had a claim for $50 against the plaintiff which he disputed. The defendants sent the plaintiff a receipt for $50 and a check for $8.48 '' in full of all demands '' against them. The plaintiff took the check, struck out the words, '' in full,'' &c., deposited it on his account and it was paid. Subsequently he returned the receipt for $50 saying that he did not recognize his liability, and credited defendants with $8.48 on account. In an action to recover the remaining $50 this court upheld the defendant's claim that the facts showed an accord and satisfaction. We think this case is readily distinguishable from the case at bar under the rule stated in 1 R. C. L. 198, as follows: ''A dispute as to the right to a set-off or counterclaim against an otherwise undisputed claim has properly been held to render the claim as a whole a disputed claim, as the claim should be treated as a single claim consisting of the undisputed part and the set-off or counterclaim,'' citing *Tanner* v. *Merrill,* 108 Mich. 58, also cited in *Hull* v. *Johnson & Co.,* on page 69, where the court finds that in the latter case the facts show a controversy or dispute, to settle which the defendants paid a certain sum which the plaintiff accepted. Upon the case made by the plaintiff's testimony in the

present case no *bona fide* dispute is shown. So far as the ruling of the Superior Court rested on the existence of a dispute, we are of the opinion that such ruling was error.

We think also that the evidence fairly raises another question which was entitled to consideration in deciding the motion for a nonsuit. The plaintiff in arguing the motion in the court below urged that if the testimony showed that the defendant's liability under the old contract had been extinguished, this had been brought about not by an accord and satisfaction, but by partial payment and novation, that is, in consideration of the payment of $354.03 and the making of a new contract for additional and future employment, and that upon the evidence as it stood he was entitled to go to the jury upon the new contract set up in the additional count of the declaration. The Superior Court in granting the nonsuit did not refer to this claim of the plaintiff which he has also urged here. The defendant in its brief somewhat summarily suggests rather than argues that the acceptance of the check with its endorsement extinguished the plaintiff's rights under the new contract, if such contract existed. The suggestion, baldly stated, seems to amount to this, namely, the (4) acceptance by a creditor of a sum of money admitted to be due by the debtor by a check purporting to be " in full of all indebtedness " will operate to extinguish the creditor's rights under another contract, although there is no dispute as to the existence or terms of the latter contract, and although such contract is one for future performance, under which no present indebtedness has accrued. In the present case it could be argued upon the testimony that, giving the endorsement on it its largest legitimate meaning, the check was intended by the parties to apply only to present indebtedness. And even if the defendant intended the check to extinguish plaintiff's rights under the alleged new contract and plaintiff understood that the check was given with this intention when

he cashed it, so that it might be argued that he had assented to the extinguishment of this contract, in the absence of any dispute concerning it, the question would then be, Was there any consideration moving from the defendant to support the implied agreement, if such agreement there was, to extinguish the contract, or was it other than a *nudum pactum?*

In this aspect of the case, we think it was error to grant a nonsuit. The plaintiff's exception is sustained and the case is remitted to the Superior Court for a new trial.

*Gardner, Pirce & Thornley,* for plaintiff.
*Thomas G. Bradshaw, Charles R. Haslam,* of counsel.
*Tillinghast & Lynch,* for defendant.