**BLT INVESTMENT COMPANY, a partnership, Plaintiff and Appellant,**

v.

**Gardell SNOW and Irma P. Snow, his wife, Defendants and Respondents.**

No. 15593.

Supreme Court of Utah.

Oct. 24, 1978.

Harold C. Verhaaren of Verhaaren & Meservy, Salt Lake City, for plaintiff and appellant.

Robert J. DeBry and Valden P. Livingston, Salt Lake City, for defendants and respondents.

HALL, Justice:

This suit is in equity, plaintiff (BLT) seeking specific performance of a written contract relating to the sale of a ranch and defendant (Snow) seeking rescission thereof. The trial court ordered rescission which decision we affirm, except as to the award of attorneys' fees.

The facts in this matter are somewhat in dispute. Because this case is in equity, we

may review both the facts and the law.[1] However we will generally defer to the trial court's decision as was so succinctly stated by Justice Wolfe in his oft-quoted concurring opinion of *Stanley v. Stanley:*[2]

> I opine that what was really meant [by the constitutional provision] was that on review we would go over the record to determine what our conclusions of fact were from the transcript of the evidence, and if at the end of that investigation we were in doubt or even if there might be a slight preponderance in our minds against the trial court's conclusions, we would affirm.

The facts of this case, as found by the trial court, and as supported by the record, are as follows:

In August, 1976, Snow mentioned to an acquaintance, one Larry Regis, that he would like to retire and sell his ranch. Regis said he might be able to help Snow find a buyer. Snow said he wanted $500,000 for the ranch, equipment, cattle, water stock and grazing rights. In October, Regis said he had some buyers willing to purchase said property for $400,000. Regis said that was a fair price and it was agreed that Regis would receive a finder's fee of 5%.[3] Sometime in October or November, Regis introduced Snow to Robert Sly and Theus Webb, representing that they were the buyers and indicating that they were partners in BLT. Regis claims that sometime in early December, he decided to become a principal in the partnership, although this fact was not disclosed to defendant until December 20, 1976. At that meeting the purchase price was reduced from $400,000 to $380,000, reflecting a credit of $20,000 as Regis' commission. On December 21, 1976, a written contract was signed by the parties but specific provisions relating to the establishment of an escrow account were largely absent. At the closing, BLT presented Snow with a cashier's check for $40,000 in return for title to certain cattle, equipment, and grazing rights (subsequently sold by BLT for a total of $65,359) and 114 shares of water stock. When a satisfactory escrow agreement which would protect Snow was not reached, Snow refused to execute and deliver deeds to the property which precipitated this lawsuit.

The trial court ordered rescission of the contract and return of the parties to their status quo, including: 1) return of the real property and water shares; 2) payment by BLT to Snow of $25,359 plus interest;[4] 3) requirement that BLT void all documents adverse to Snow's ownership and possession of the ranch and water shares; and 4) attorney's fees in the amount of $6,238 to Snow.

The controversy generally concerns whether an escrow agreement may be implied either from the contract itself or from oral discussions between the parties and whether Regis breached his fiduciary duty to Snow.

BLT claims the contract was clear and contained all the terms of the escrow agreement, whose reduction to writing is not requisite for specific performance. The court found "the intent of the parties was that the agreement was not complete unless and until the parties agreed in writing to the terms of an escrow which would provide a complete security interest to Snow for the unpaid portion of the contract."

■ Although reference is made to an escrow account, the preliminary agreement reflects nothing of a final commitment and did not represent the proposed alternative drafts which had been promised to Snow's satisfaction. As to the contention that the escrow terms need not be incorporated in the contract in order to grant specific per-

---

1. Utah Constitution, Article VIII, Sec. 9.

2. 97 Utah 520, 94 P.2d 465 (1939).

3. Although not challenged here, we recently held that without a broker's license, there can be no enforcement of a finder's agreement. *Diversified General Corp. v. White Barn Golf Course, Inc.,* Utah, 584 P.2d 848 (filed August 31, 1978).

4. This figure represents the difference between the down payment of $40,000 and $65,359 as the amount the chattels and grazing rights sold for.

formance, there appears to be no Utah case to support such a general principle. It is our opinion that such a principle might well apply under certain circumstances, but under the facts of this case the execution of a mutually acceptable escrow agreement was essentially made a condition to the preliminary agreement. This Court recently denied specific performance of a contract where there remained an unsettled matter to be agreed upon which was of particular concern to both parties.[5]

BLT further claims that Regis was not in a fiduciary relationship with Snow and, even if such relationship existed, it was not breached. It is true that Regis told Snow he was one of the principals of BLT but such disclosure occurred only after the basic commitment had been made and only one day before the agreement was signed. Equity and good conscience require an immediacy of apprisal of a conflict of interest.[6] Given the reduction of the sale price by $20,000, Regis (and therefore BLT) was clearly in a fiduciary relationship with Snow. It was not unreasonable for the trial court to conclude that Regis' first role was "servant for Snow," which changed when he became a buyer and assumed the role of "servant for Regis and BLT" with a selfish interest in procuring terms to be incorporated in a final contract favoring BLT.

A further claim on appeal is that rescission is not available to a defaulter or to one who mistakes the terms of a contract. The disagreement here as to escrow specifics would seem to be important enough that an equity court might justifiably conclude an excuse existed for non-performance of a preliminary matter. The evidence does not show that there was both a default and mistake that would preclude equitable relief. Furthermore, the fiduciary has not carried his burden of showing a lack of clear and convincing evidence to support the trial court's conclusion that Snow was mistaken in his understanding of the contract terms.

That the court did not return the parties to their status quo as decreed, is a conclusion fraught with the necessity of equating plaintiff's losses with those of defendant. We are convinced that the orders of the court, supra, reflect an admirable attempt to balance the scales evenly between the parties. The only error the trial court committed was the award of defendant's attorneys' fees provided for under the contract of December 21, 1976. The authorities generally hold that rescission extinguishes the contract "so effectually" that it "never had any existence."[7] The position we adopt is articulated in the case of *Bodenhamer v. Patterson*[8] as follows:

> Finally, Pattersons contend that the trial court erred in denying their request for attorney fees. This was not error. Their claim for attorney fees is based upon a provision in the contract of sale. By asking for rescision of the contract, they disaffirmed it in its entirety. They may not avoid the contract and, at the same time, claim the benefit of the provision for attorney fees.

The judgment is affirmed except as to that part awarding attorneys' fees, which is ordered vacated, with a remand and instructions to so vacate. No costs awarded.

ELLETT, C. J., and MAUGHAN, CROCKETT and WILKINS, JJ., concur.

---

5. *Jensen v. Bouwhuis,* Utah, 577 P.2d 555 (1978).

6. See 3 Am.Jur.2d Agency, Sec. 221.

7. 77 Am.Jur.2d Vendor and Purchaser, Sec. 602.

8. 278 Or. 367, 563 P.2d 1212 (1977).