Jay A. QUEALY, Jr., Virginia W. Quealy, his wife, Peter P.K. Ng, and Wing Jun Ng, his wife, Plaintiffs and Appellants,

v.

Bruce B. ANDERSON and Gary S. Anderson, Defendants and Respondents.

No. 19016.

Supreme Court of Utah.

Feb. 3, 1986.

Tara D. Anderson, Don B. Allen, Salt Lake City, for plaintiffs and appellants.

James A. Boevers, Gordon Strachan, Salt Lake City, for defendants and respondents.

HOWE, Justice:

Plaintiffs appeal from a judgment awarding defendants Bruce B. Anderson and Gary S. Anderson attorney fees and costs in the sum of $24,877 pursuant to a provision in a contract.

In July 1977, plaintiffs, as sellers, and defendants, as buyers, entered into an earnest money receipt and offer to purchase, whereby the sellers agreed to sell and the buyers agreed to purchase a ranch situated in Wasatch County consisting of more than nine hundred acres. The agreement required purchasers to satisfy two conditions precedent within sixty days: First, assurance of an adequate culinary and irrigation water system and, secondly, assurance of proper zoning to develop the property into residential lots. The agreement also contained the following provision regarding attorney fees:

We do hereby agree to carry out and fulfill the terms and conditions specified above.... If either party fails so to do, he agrees to pay all expenses of enforcing this agreement, or of any right arising out of the breach thereof, including a reasonable attorneys fee.

In May 1978, the buyers' attorney notified the sellers' attorney that the buyers had expended more than $50,000 to drill a producing water well but had been unsuccessful. He gave notice that the buyers would not complete the purchase of the property and requested that the real estate broker, who was holding their $5,000 earnest money deposit, return those funds to the buyers. The realtor complied with that request and returned the $5,000 earnest money to the buyers without the express consent of the sellers. The sellers afterwards sold the property to other parties at a lower price than the buyers had offered. Later, the sellers instituted this lawsuit to recover the damages which they had sustained by the buyers' failure to perform. The jury found that the condition precedent to performance of the agreement relating to the assurance of proper zoning was not satisfied because Wasatch County had failed to give the buyers such assurance and the buyers prevailed. The jury further found that the claims of the sellers were the subject of a "settlement and accord" with the buyers. In a post trial motion, the buyers moved for and were granted an award of $24,877 attorney fees and costs pursuant to the contract provision set out above. From that award, this appeal is taken.

The accord and satisfaction found by the jury in their special verdict precludes any award of attorney fees to the buyers. It is true, as pointed out by the buyers, that an accord and satisfaction may discharge an entire contract or only a portion thereof if the contract gives rise to several and distinct obligations or liabilities. However, the buyers err in arguing that the accord and satisfaction found by the jury here did not discharge the provision in the contract respecting the remedy

of attorney fees. There is nothing in the special verdict nor in the evidence which would provide any basis for this Court to gratuitously impose such a limitation. The scope of an accord and satisfaction is determined by the intention of the parties, as with any other contract. As will be hereafter demonstrated, the conclusion is irresistible that the parties intended to fully and completely settle with each other any and all liability arising from their written agreement, together with the remedies provided therein for its enforcement. Furthermore, the limitation urged by the buyers is entirely inconsistent with the position taken by them in the trial court.

In a trial brief written by counsel for the buyers, he stated that the sellers had an alleged claim against the buyers for breach of contract. He further stated that they agreed to settle that claim if buyers cooperated in assisting them in reselling the property to one Sheranian, by giving Sheranian a first option to purchase twenty-nine acres which the buyers owned adjacent to the sellers' property. Continuing his argument, counsel said:

> Defendants [buyers] accepted that offer, creating a new agreement between the parties, which was executed by the actual granting of a first right to purchase by letter of June 14, 1978. The consideration is the granting of the first right of purchase, *an obligation different from and in addition to any prior contractual obligations* of defendants. Therefore, the court should find that plaintiffs entered into an accord and satisfaction *in full settlement of any* dispute between the parties.

(Emphasis added.)

■ Thus, the buyers in the trial court viewed the accord and satisfaction as a complete substitute for the earnest money receipt and offer to purchase. That being so, attorney fees are not recoverable by either party unless there was provision for them in the accord and satisfaction. In *Golden Key Realty, Inc. v. Mantas,* Utah, 699 P.2d 730 (1985), we held that a provision for attorney fees in a written agree-

ment was rendered inoperative by a later agreement of accord and satisfaction which contained no such provision. In the instant case, the buyers pleaded an accord and satisfaction. The jury found that one was made. The original agreement between the parties cannot now be the basis for awarding attorney fees. It is undisputed that the oral accord and satisfaction had no provision for attorney fees.

■ While it is true that the buyers did not make any request for attorney fees until after the accord and satisfaction was made, that fact is of no consequence. Unknown claims and liability may be extinguished if the parties so intend. A common example is the release used to settle personal injury claims. Here, it appears that it was the intention of the parties to fully extinguish all liability to each other arising out of their written agreement. This included liability for attorney fees which was part of the remedy provided for enforcing the agreement. The buyers could not thereafter, on their own, revive that remedy and rely on it as a source of authority to recover their attorney fees in enforcing the accord and satisfaction.

When the buyers found that they were unable to meet the conditions precedent to their obligation to purchase the sellers' land, they notified the sellers that they would not purchase the land. They asked for a return of their $5,000 earnest money which they received. Sellers, thereafter, commenced negotiations to sell the property to Sheranian. It was in the course of those negotiations that the sellers asked the buyers to give Sheranian an option to purchase the twenty-nine adjoining acres. The buyers complied. No reason has been suggested by the buyers, and none appears from the evidence, why the buyers at that time would not want to make and did not intend to make their compliance to the sellers' request a full and complete settlement of any and all liability arising from the earnest money agreement. The agreement was not going to be performed. There were no duties or obligations arising from it which were ongoing; neither party at

that time expected anything further out of the earnest money agreement. It was in the interests of the buyers to fully and completely extinguish it, and to be completely freed from it.

The buyers freely admit that it was also the intention of the sellers to make a full and complete settlement. In a brief presented to the trial court in support of the motion for a directed verdict, the buyers pointed out that Mr. Quealy, one of the sellers, testified that a settlement had been reached at the time the buyers gave Sheranian the option. The buyers pleaded and argued that the settlement was an accord and satisfaction constituting a complete defense to the sellers' suit for damages. Not one word appears in any brief or pleading filed in the trial court that the settlement extended to only part of the earnest money agreement, as the buyers now contend. The buyers do not point to any conversations, correspondence, or other evidence from which such a conclusion could be drawn. It would seem to reasonably follow that if, as argued so stoutly by the buyers, they intended to fully and completely absolve themselves of all liability under the agreement, that the sellers would intend to receive the same protection for themselves. No basis exists to deny the sellers the same full discharge for which the buyers successfully bargained. Under the circumstances then existing, the conclusion is inescapable that both parties intended to make the giving of the option to Sheranian a full and complete discharge of all rights and obligations arising out of the earnest money agreement.

In *Messick v. PHD Trucking Service, Inc.*, Utah, 615 P.2d 1276 (1980), *Bennett v. Robinson's Medical Mart, Inc.*, 18 Utah 2d 186, 417 P.2d 761 (1966), and *Dillman v. Massey Ferguson, Inc.*, 13 Utah 2d 142, 369 P.2d 296 (1962), we found two separate and distinct claims and held that an accord and satisfaction of one did not affect the other. It is obvious that those cases are not controlling in the instant case.

Cases from other jurisdictions are in accord with the Utah cases cited above.

They generally hold that an accord and satisfaction reached as to one account, contract, purchase of goods, or item does not bar recovery on other accounts, contracts, purchases, and items unless it appears that such was the intention of the parties. *See Crucible Steel Co. of America v. Premier Manufacturing Co.*, 94 Conn. 652, 110 A. 52 (1920) (separate invoices); *Garland v. Linville Improvement Co.*, 184 N.C. 551, 115 S.E. 164 (1922), and *Moore & Kling v. Legace*, 55 R.I. 262, 180 A. 339 (1935) (two accounts); *Savannah Sugar Refining Corp. v. Sanders*, 190 N.C. 203, 129 S.E. 607 (1925), and *Clark v. Summerfield Co.*, 40 R.I. 254, 100 A. 499 (1917) (two distinct contracts); *C. & O. Oil Co. v. Curtis Funeral Home*, 106 Vt. 342, 175 A. 9 (1934), and *Krohn-Fechheimer Co. v. Palmer*, 282 Mo. 82, 221 S.W. 353, 10 A.L.R. 673 (1920) (two separate orders of goods); *Willred Co. v. Westmoreland Metal Manufacturing Co.*, 200 F.Supp. 55 (D.C.Pa.1959); and *Redman Development Corp. v. Pollard*, 131 Ga.App. 708, 206 S.E.2d 605 (1974) (two separate items). In many of the cases there were communications between the parties or written documents or notations on the settlement check which indicated the limited scope of the accord, and made clear that it did not extend to every transaction that the parties had had between them.

■ In the instant case, there are not separate contracts, orders, accounts, or invoices. There was a single, indivisible contract whereby the sellers agreed to sell and the buyers agreed to buy, subject to certain conditions precedent, a tract of land. The buyers claimed and the jury found that the buyers' performance was excused because the conditions precedent were not met. While that seemingly terminated the duty of the parties to buy and sell to each other, according to the buyers there was in addition a later accord and satisfaction of that same obligation. Unlike the cases cited above in which only a partial accord and satisfaction was found, the buyers can point to no evidence which supports their contention now advanced in this Court that the accord and satisfaction was only par-

tial. The request for attorney fees cannot be viewed as a separate and distinct claim of the buyers unaffected by the accord and satisfaction. Indeed, it is not a claim in the usual sense at all, but is a remedy for enforcing the agreement. *See Whiting Stoker Co. v. Chicago Stoker Corp.*, Ill., 171 F.2d 248 (C.C.A. 7th 1948), *cert. denied* 337 U.S. 915, 69 S.Ct. 1155, 93 L.Ed. 1725 (1949), for a good example of two separate and distinct claims arising from a single written contract. The buyers admit that the obligation to buy and sell was discharged. It is only reasonable to conclude that in the absence of any evidence to the contrary, the parties intended to likewise discharge all dependent rights and remedies. If the parties intended to discharge something less than their entire agreement, it was the duty of the buyers to see that the record contained such evidence. *Silvander v. Ploc*, 42 S.D. 539, 176 N.W. 516 (1920).

The buyers cite no cases in support of their contention that the remedy of attorney fees can survive the discharge of the duty to perform under a contract. We have found none. The buyers cite two cases in support of their thesis that they had two separate claims. Neither case is on point. Neither case deals with the survival of a remedy. In *Scantlin v. Superior Homes, Inc.*, 6 Kan.App.2d 144, 627 P.2d 825 (1981), a dispute arose between the builder of a home and a buyer over certain defects of construction. An accord and satisfaction was reached by the buyer placing $1,000 of the purchase price in escrow pending correction of a specific list of defects which was prepared by the parties. Later, additional defects not listed were discovered by the buyer, and she brought suit against the builder. It was held that the accord and satisfaction extended only to those defects which were known, or should have been known by the buyer, at the time the accord and satisfaction was made.

In *Plywood Marketing Association v. Astoria Plywood Corp.*, 16 Wash.App. 566, 558 P.2d 283 (1976), the court held that the defendant's payment of $33,287 as its pro-rata share of the 1966–69 losses of the plaintiff cooperative of which it was a member, did not constitute an accord and satisfaction for other losses, the existence of which was not then known and which could not have been within the contemplation of the parties. We have no quarrel with these cases since in each of them the plaintiff had two separate, unrelated and distinct claims. However, in the instant case, we are confronted with the accord and satisfaction of a single indivisible written agreement. All of its provisions, including the remedy of attorney fees, were well known to the parties when the accord was made. There is no evidence that the parties intended, or that it would have made any sense for the parties to have intended, to discharge their respective duties to perform under the agreement but not discharge the remedy for enforcing the agreement.

■ The buyers successfully pleaded and the jury found that a substitute agreement had been made. This later agreement was oral and contained no remedy of attorney fees. We cannot go behind the accord and afford the buyers a remedy contained in the agreement it replaced. The breach of the substitute agreement cannot be redressed by a remedy contained only in the earlier agreement. *Golden Key Realty, Inc. v. Mantas, supra.*

The judgment is reversed. Costs awarded to plaintiffs.

STEWART, J., and DAVID E. ROTH, District Judge, concur.

DURHAM, J., having disqualified herself, does not participate herein; ROTH, District Judge, sat.

ZIMMERMAN, Justice (concurring):

I join reluctantly in the opinion of the majority only because I see no legitimate way of avoiding the result.

The contract in question is a standard form agreement entitled "Earnest Money Receipt and Offer to Purchase." This pre-

printed contract was prepared under the auspices of the National Association of Real Estate Brokers. It is used by countless thousands each year in what is for most of them the largest financial transaction of their lives—the purchase of a home. The terms of an agreement so widely used among lay persons should be construed carefully by the courts to assure that they work in the fairest manner possible. In the present case, a serious flaw in the contract's wording has come to light. If one party attempts to enforce the agreement, but the other party successfully defends by showing that the contract no longer is in force because of an accord and satisfaction or a rescission, the defendant cannot recover his attorney fees. Yet if the plaintiff is successful in his suit, he can recover his fees. This gives the plaintiff a monetary advantage in bargaining and in any suit.

Although the record is silent on the matter, there is no reason to believe that if the parties to the contract before us had considered the issue, they would have written it to produce the result reached by the Court. Similarly, I suspect that laymen who routinely enter into these standard form contracts with no legal advice assume that the attorney fee provision means that if any litigation arises out of the contract, the prevailing party will be awarded his attorney fees. This would not be an unreasonable assumption to one unfamiliar with the intricacies of the law. Yet I recognize that absent some other evidence of intent, the language of the contract, when read in light of the abstruse doctrines of accord and satisfaction or rescission, does require the result reached by the majority. And I can see no way for this Court to remedy the problem without doing undue violence to the legal doctrines involved.

I would prefer to join with the Chief Justice. Unfortunately, I cannot agree with him that the accord and satisfaction left the attorney fee provision in place.

1. Utah, 586 P.2d 456 (1978).

*BLT Investment Co. v. Snow*, Utah, 586 P.2d 456 (1978), seems to govern here.

The result reached by the Court today strikes me as unjust. However, the remedy lies with the draftsmen of such agreements, or with lawyers for parties using them, and not with this Court.

HALL, Chief Justice (dissenting):

The opinion of the Court is premised upon what it characterizes as an irresistible conclusion that the parties intended to fully and completely settle with each other any and all liability arising from the contract, together with the remedies provided therein for its enforcement. However, plaintiffs were obviously not seized by any such irresistible conclusion. On the contrary, plaintiffs chose to disregard the accord and satisfaction reached by the parties and brought this action on the contract, urging its viability, and seeking damages for alleged breach. Defendants were thus compelled to defend the contract action. Defendants were successful in their defense, relying on the theories of failure of a condition precedent and accord and satisfaction. Given these circumstances, plaintiffs should not be heard to complain about an award of attorney fees to defendants for successfully defending their contract position.

In *BLT Investment Co. v. Snow*,[1] we vacated an award of attorney fees based on a contract provision. In that case, the defendants had successfully sought rescission of the contract while the plaintiff sought specific performance of the contract. We held that the rescission of the contract and return of the parties to their status quo had completely extinguished the contract and, therefore, attorney fees could not be awarded on the basis of the contract provision.

The rationale of *BLT Investment* is inapplicable to the instant case because there was no rescission of the contract. As we held in *BLT Investment*, when a contract is

rescinded, the parties are returned to their status quo and the contract is extinguished in its entirety.[2] Here, defendants prevailed on the theories that their duty to buy the property was excused by the failure of a condition precedent and discharged by an accord and satisfaction. Neither theory necessarily entails the extinguishment of the entire contract.[3]

A condition precedent may qualify the existence of an entire contract or only the performance of a contractual duty.[4] Where only the performance of a duty is qualified by the condition, failure of the condition excuses that performance only and the remaining provisions of the contract remain in effect. In this case, the condition that assurances of proper zoning be obtained, qualified only defendants' duty to buy the land.[5] The failure of that condition excused defendants' performance of that duty but had no effect on the remaining rights and duties created by the contract, including those arising from the attorney fees provision.

Similarly, an accord and satisfaction may discharge an entire contract or only a portion thereof.[6] While claims within the scope of an accord are discharged upon satisfaction of the accord, any other rights or duties created by the contract remain in effect.[7] The scope of an accord is primari-ly a matter of the intention of the parties.[8] Claims that are unknown or not yet in existence when an accord is reached are outside the scope of the accord.[9] In the present case, defendants' claim for attorney fees, having arisen only after the accord and satisfaction occurred, was not within the scope of the accord and was thus not discharged upon satisfaction of the accord.

Plaintiffs further contend the language of the attorney fees provision itself does not support an award to defendants for fees incurred in successfully defending a lawsuit on the contract. I do not agree.

The provision for attorney fees is contained in a preprinted document denominated as a "Uniform Real Estate Contract" which is in general use in this jurisdiction. Plaintiffs argue the provision creates a right to attorney fees only for enforcing the contract or a right arising from breach of the contract against the defaulting party. Thus, under plaintiffs' interpretation, defendants would be entitled to attorney fees only if they brought an action against the plaintiffs in the event of plaintiffs' default. Relying on our recent decision in *White v. Fox*,[10] plaintiffs assert that defendants, not having bargained for an express contractual right to attorney fees incurred in defending a lawsuit on the con-

---

**2.** 586 P.2d at 458.

**3.** Other courts have also refused to bar a prevailing defendant from receiving attorney fees under a contract provision where there was no rescission of the contract. *E.g., Usinger v. Campbell,* 280 Or. 751, 759, 572 P.2d 1018, 1023 (1977); *Woodruff v. McClellan,* 95 Wash.2d 394, 397, 622 P.2d 1268, 1270 (1980).

**4.** *See* 5 W. Jaeger, *Williston on Contracts* § 666 (3d ed.1961).

**5.** The contract states:
   52.j. This offer is made subject to the following conditions being satisfied by purchaser within 60 days from date of acceptance of this offer.
   . . . .
   2. Assurance of proper zoning to develop the property into residential lots. . . .

**6.** 1 C.J.S. *Accord and Satisfaction* § 19, at 486 (1985), states:

> Even though a contract appears to be entire, if it gives rise to several and distinct obligations or liabilities the parties may make an accord and satisfaction of one or more of them without affecting the others. . . .

(Footnote omitted.)

**7.** 1 C.J.S. *Accord and Satisfaction* § 19, at 486 (1985).

**8.** *See Messick v. PHD Trucking Serv. Inc.,* Utah, 615 P.2d 1276, 1277–78 (1980).

**9.** *See Messick,* 615 P.2d at 1278. *See also Scantlin v. Superior Homes, Inc.,* 6 Kan.App.2d 144, 627 P.2d 825, 831 (1981); *Plywood Mktg. Assocs. v. Astoria Plywood Corp.,* 16 Wash.App. 566, 574–75, 558 P.2d 283, 289 (1976).

**10.** Utah, 665 P.2d 1297 (1983).

tract, have no legal basis for claiming such fees.

Plaintiffs' construction of the attorney fees provision is unreasonably narrow and contrary to the intent behind the provision. Unlike the provision at issue in *White*, the provision in this case, even under plaintiffs' interpretation, applies to both parties to the contract. In *White*, we held that where the parties had equal bargaining power an agreement by one party to pay attorney fees could not be read to impose a reciprocal duty on the other party.[11] In this case, by the terms of the provision itself, the duty to pay attorney fees is reciprocal, and the issue is whether the duty includes liability for fees incurred by either party in successfully defending an action on the contract. I think it does. In successfully asserting that their contractual duty to buy the property had been excused, defendants in effect enforced their contractual rights. Thus, payment of their attorney fees by plaintiffs was required by the contract provision.

Moreover, the intent behind an attorney fees provision is to protect the party in whose favor the provision runs (in this case both parties) from the costs of litigation in the event such protection is warranted, i.e., in the event that the party prevails. This intent is fostered by requiring payment of attorney fees, regardless of which party initiated the lawsuit. To limit the award of attorney fees to the party commencing the action in no way advances the purpose of an attorney fees provision. Rather, it serves the counter-productive end of penalizing one who is the target of an unsuccessful lawsuit on the contract. Thus, the more reasonable interpretation of the contract provision is that which provides for an award of attorney fees to the prevailing party in litigation on the contract, regardless of whether that party initiated the lawsuit.

I would affirm the judgment of the district court.

11. 665 P.2d at 1300.